## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| George Manning,<br><br>                              Plaintiff,<br><br>            -v-<br><br>Commissioner of Social Security,<br><br>                              Defendant. | 2:23-cv-8406<br>(NJC) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff George Manning ("Manning"), proceeding pro se, brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), dated December 2, 2022, denying Manning's request for a waiver of the reduction of his monthly Social Security benefits by $100 in order to repay an alleged overpayment of $184,797 in disability insurance benefits under Title II of the Act. Additionally, Manning asserts negligence and intentional infliction of emotional distress claims arising out of that decision.

Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") (Pl.'s Mot. J. Pleadings, ECF No. 36; Def.'s Mot. J. Pleadings, ECF No. 46) and the Commissioner's motion to dismiss Manning's negligence and intentional infliction of emotional distress claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. (Mot. Dismiss, ECF No. 35; Mem. ISO Mot. Dismiss ("Mot. Dismiss Mem."), ECF No. 35-1.)

The facts of this case are troubling. Manning is a decorated combat veteran of the United States Army who suffers from Post Traumatic Stress Disorder and is physically and mentally disabled. Due to no fault of his own, the Social Security Administration ("SSA") overpaid Manning $184,797 in benefits between 1996 and 2014 and let two decades go by before noticing the error in 2017 and initiating a process to recoup the overpayment in 2018. Indeed, an administrative law judge ("ALJ") of the Social Security Administration found that in light of Manning's "mental impairment, he was *not at fault*" for the overpayment in benefits. (Admin. R. ("R.") 15, ECF No. 14 (emphasis added).)  Under these circumstances, it is understandable that the SSA's belated discovery of the overpayment of benefits to Manning, and its subsequent efforts to collect that money from him, has caused Manning confusion and frustration.

Nevertheless, the plain text of the Social Security Act is clear: "Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery *shall* be made, under regulations prescribed by the Commissioner." 42 U.S.C. § 404(a) (emphasis added). Where a person, like Manning, is "without fault" for an overpayment, the Commissioner is prohibited from adjusting payments or recovering that overpayment "if such adjustment or recovery would defeat the purpose of [Title II of the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). However, in order for the Commissioner to determine whether recovery of the overpayment would defeat a purpose of Title II of the Social Security Act or be against equity and good conscience, the recipient of the overpayment must provide certain information to the SSA.

Here, Manning has consistently refused to provide financial information that is required by the SSA to determine whether collection of the overpayment can be waived because (1) it

would deprive Manning "of income required for ordinary and necessary living expenses," 20 C.F.R. § 404.508(a), and thereby defeat the purpose of Title II of the Social Security Act, or (2) Manning had changed his position for the worse or "relinquished a valuable right" based on the overpayment, 20 C.F.R. § 404.509(a)(1), which would render collection against equity and good conscience. As a result, the Commissioner denied Manning's challenge to the SSA's collection of the overpayment through a $100 reduction in his monthly benefits. An administrative law judge of the SSA upheld that decision. In doing so, the judge made no error in ruling that Manning failed to demonstrate that collection of the overpayment would satisfy either of the two aforementioned criteria because Manning did not provide the necessary financial information to the SSA—despite being provided the forms again and granted additional time to complete and submit them.

Moreover, this Court lacks subject matter jurisdiction over Manning's negligence and intentional infliction of emotional distress claims against the Commissioner because Congress has not waived sovereign immunity over such claims. The Social Security Act bars plaintiffs from bringing a civil action against the SSA for monetary relief based on violations of the Social Security Act. To the extent Manning asserts his tort claims against the Commissioner pursuant to the Federal Tort Claims Act ("FTCA"), his claims fail for lack of subject matter jurisdiction because he failed to name the United States as a party and failed to administratively exhaust his claims.

Accordingly, as discussed in further detail below, Manning's motion for judgment on the pleadings is denied and the Commissioner's cross-motion for judgment on the pleadings and motion to dismiss are both granted.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the administrative record ("record") filed by the Commissioner. (Admin. R. ("R."), ECF No. 14.)

### a.    Manning's Benefits and the Commissioner's Notice of Overpayment

According to Dr. Robert Conciatori, Manning's treating physician, Manning is a "decorated combat veteran" who served during the Vietnam War and suffers from Post Traumatic Stress Disorder and several other mental impairments. (R.782.)

In May 1996, Manning began receiving both disability insurance benefits from the SSA and workers' compensation payments from the United States Department of Labor under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq*. (R. 170–173, 648.) Manning began receiving workers' compensation benefits due to his mental impairment of "adjustment disorder with mixed disturbance of mood and conduct." (R. 318.) The record indicates that Manning began receiving disability insurance benefits "based on a depressive disorder or similar disorder." (R. 92.)[1]

---

[1] The precise disability for which the SSA found that Manning was entitled to disability insurance benefits is not clear based on the record. When describing his disability at the October 17, 2019 hearing before ALJ Tobias, Manning testified that he was "physically and mentally disabled." (R. 59–60.) The Appeals Council stated that Manning began receiving disability insurance benefits "based on a depressive disorder or similar disorder," but no internal documentation of this finding appears in the record. (R. 92.) Dr. Conciatori, who has treated Manning since at least 1996, wrote in a December 6, 2017 letter to the SSA that Manning:

> is diagnosed with panic disorder, paranoia, post traumatic stress disorder, major depression and anxiety[.] In addition he has a pacemaker (with shortness of breath after ¾ block walk), has orthopedic injuries, uses a wheelchair and is a cancer survivor. He is permanently and totally disabled mentally and physically. He qualified for SSD in 1996 and also Federal Workers Compensation on other psychiatric grounds beginning in 1996 as well.

On January 24, 2017, the SSA informed Manning in writing that it discovered that he had been simultaneously collecting disability insurance benefits and workers' compensation benefits since May 1996. (R. 175–76.) Because the SSA was previously unaware of the workers' compensation benefits paid to Manning, it did not adjust Manning's disability insurance benefits as required under the regulations, resulting in overpaid disability insurance benefits between 1996 and 2014.[2] (R. 175–76.) The SSA sent Manning a notice dated February 16, 2017, informing him that the SSA had overpaid him $184,797 in disability insurance benefits and setting forth instructions for paying back the overpayment incrementally, for appealing the overpayment determination, and/or requesting a waiver of the overpayment. (R. 178–82.)

   b.  Manning's Request for Reconsideration/Waiver of the Overpayment

On or about April 18, 2017, Manning submitted a form titled "Request for Reconsideration," form SSA-561. (R. 184.) In the section of the form asking for the reasons why the claimant requests reconsideration of the SSA's determination, Manning wrote: "the overpayment was not my fault and repaying it would be unfair to me." (*Id.*) The SSA construed this response as a request for a waiver of the overpayment and sent a letter to Manning on May 11, 2017, requesting that Manning fill out additional forms needed by the SSA to decide Manning's waiver request. (R. 186, 238.)[3] In this letter, the SSA requested that Manning complete form SSA-632, a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate," which asks questions about a claimant's income, resources, and monthly

---

(R. 196; *see also* R. 913.)

[2] Once Manning turned 65 years of age, in November 2015, his disability insurance benefits ended, but he was entitled to receive retirement benefits. (*See* R. 168.)

[3] *See also* R. 201 (SSA letter to Manning dated January 24, 2018, explaining that the SSA "believe[ed]" that in Manning's April 18, 2017 request, Manning "may be requesting that [the SSA] waive collection of the overpayment").

expenses. (R. 186–87; *see also* R. 814–21.) The SSA also requested that Manning fill out form SSA-4641, an "Authorization for the Social Security Administration to Obtain Accounts Records from a Financial Institution and Request for Records," which would authorize the SSA to obtain Manning's financial records. (R. 186–87.)

By October 23, 2017, the SSA had not received these requested forms from Manning, and it sent a second letter requesting that Manning complete the forms. (R. 238.) Manning sent a letter dated December 6, 2017, stating, in part:

> I'm asking for a . . . waiver of collection on the overpayment as 'alleged.' And reconsideration of my waiver in writing at your local Social Security office. The overpayment was not the fault, of the claimant and it would be unfair for other reasons As well, And, collection of the overpayment will be contrary to the intent of the program.

(R. 193.)[4] Manning did not include the requested forms with this letter. (R. 193–94.) By December 29, 2017, after speaking with a representative from the SSA, Manning submitted the form SSA-632 with only two pages filled out. (R. 238–39, 814–21.) He did not complete the authorization form. (*Id.*) In his notes on their phone call, the SSA representative noted that he explained to Manning that the SSA "will need full waiver" and Manning stated on the phone that he did "not want to fill out his financial information." (R. 239.)

On December 29, 2017, the SSA sent Manning a letter stating that his request for waiver of the collection of his overpayment was denied based on the information it had at the time, but it also informed Manning that he had the right to a personal conference regarding his request. (R. 198–99.) In a letter dated January 24, 2018, the SSA further stated that it dismissed Manning's "Request for Reconsideration" because it "believe[ed]" that Manning "may be requesting that

---

[4] Excerpts from the record and the parties' submissions are reproduced here exactly as they appear in the original. Unless otherwise noted, errors in spelling, punctuation, or grammar will not be corrected or highlighted.

[the SSA] waive collection of the overpayment" and the SSA had issued a previous decision on Manning's waiver request. (R. 201.)

Manning had a personal conference before the SSA on February 6, 2018. (R. 239.) Shortly thereafter, Manning submitted another incomplete Request for Waiver of Overpayment Recovery form (Form SSA-632). (R. 211–12; *see also* R. 349.) On February 15, 2018, the SSA denied Manning's request to reconsider/waive collection of the overpayment, finding that he was at fault for the overpayment because he did not inform the SSA of the workers' compensation benefits, and that recovery would not defeat the purpose of Title II of the Act because Manning had "refused to disclose his income, expenses and resources during the interview." (R. 213–19.)

On April 2, 2018, the SSA sent Manning a notice stating that "[a]s you asked, we will withhold money from your checks to collect the overpayment." (R. 223.) The letter states that the SSA would withhold $100 from each of Manning's disability insurance benefits for 1,833 months. (*Id.*)

c. First Hearing and Decision by Administrative Law Judge David Tobias

On April 3, 2018, Manning appealed the denial of waiver and requested a hearing before an administrative law judge. (R. 221.) ALJ David Tobias ("ALJ Tobias") held a hearing on October 17, 2019, and Manning appeared pro se. (R. 27–30.) At this hearing, Manning testified that he recalls that he provided the SSA with information about his workers' compensation benefits, but that he did not know that he was supposed to inform the SSA every time the amount he received in workers' compensation benefits changed. (R. 37, 41, 44, 46–47.) He further testified that he was "physically and mentally disabled" and suffered from "paranoia, schizophrenia," that his adult daughter has been his caretaker, and that his adult son and daughter helped him prepare the statements that he had submitted in support of his waiver request. (R. 49–50, 59, 64.)

Manning also testified about his financial circumstances. (R. 44–53.) Manning testified that, at that time, he was receiving about $2,400 per month in workers' compensation benefits and $1,200 per month in disability insurance benefits after accounting for the $100 deduction made by the SSA to incrementally recoup the amount of overpayment. (R. 44, 50.) He testified that he did not have any other source of income. (R. 50.) Manning testified that he had owned a home where he lived with his 28-year-old son and that he owned a used 2009 BMW, which he had purchased for somewhere "in th[e] range" of $5,000 to $12,000. (R. 48–49, 53–54.) He further testified that he has two bank accounts, a checking account and a savings account, and that for the past "[c]ouple of years," he has had roughly $5,000 saved between the two accounts. (R. 51–52.) He testified that his monthly expenses included the following: a $1,300 mortgage payment, $150 in car payments, $134 for gas, $140 for electricity, $293 for health insurance, $123 for his cell phone, $300 for groceries, and the minimum payment required on each of his five credit cards, which is around $35 per card. (R. 48–49, 52–56.) Manning further stated that he had a total of $19,500 in credit card debt across five different credit cards. (*See* R. 55.) He testified that he accrued this credit card debt when he paid for necessary household expenses like a roof, a gate, a "big plumbing bill," and a "heating system that went bad." (R. 55.) He testified that his son does not contribute to household expenses, and that his son has his own family for whom he has to provide. (R. 56–57.)

Manning testified that he could not afford the $100 reduction that the SSA had been making to his monthly disability insurance benefits and added: "I'm struggling right now with what they've done." (R. 52.) He stated that he has "been, you know, getting some money from other people" to help him pay his bills, but that he sometimes still receives "late payments" "because [he is] struggling to pay a bill." (R. 65–66.)

ALJ Tobias explained to Manning that he was required to fill out a form answering questions about his finances and to attach supporting documentation, to which Manning responded, "I will, I will." (R. 73.) Manning agreed to mail the form with his financial information in two weeks, or, if necessary, he would contact ALJ Tobias to request more time. (R. 79.) On November 14, 2019, a hearing office employee called Manning about his outstanding financial forms. (R. 345.) The employee's notes on the phone call indicate that Manning responded that he would not fill out any more forms for the government and would take his chances on an appeal. (R. 345.)

On December 17, 2019, ALJ Tobias denied Manning's request for a waiver. (R. 81–89.) He issued a written decision finding that Manning was at fault for the overpayment of benefits by not informing the SSA about his workers' compensation benefits and that, therefore, the SSA's collection of the overpayment was not waived. (R. 86–88.) ALJ Tobias also noted that Manning had not disclosed his income, resources, or expenses to the SSA despite being afforded additional time after the hearing to do so. (R. 87.)

### d. First Appeals Council Decision

On December 20, 2019, Manning filed a request for a review of the ALJ's decision. (R. 356.) On January 25, 2022, the Appeals Council vacated ALJ Tobias's decision finding Manning at fault. (R. 91.) The Appeals Counsel remanded the case to an ALJ to consider several different issues, including: (1) whether Manning had provided the SSA information regarding his receipt of workers' compensation benefits on September 28, 2002 and January 15, 2006, as some documentation in the record suggested; and (2) whether Manning's mental impairments prevented him from understanding his obligation to report his additional benefits, and, if so, whether recovery of the overpayment would defeat the purpose of Title II and/or be against equity and good conscience. (R. 90–94.)

9

e.  Second Hearing and Decision by ALJ Andrew Weiss

A hearing via telephone was scheduled for July 12, 2022 before ALJ Andrew Weiss ("ALJ Weiss"), but Manning submitted a written request to waive his right to appear at the hearing for psychological and medical reasons. (R. 99, 128–33.) On July 26, 2022, ALJ Tobias requested in writing that Manning complete the form SSA-632 by providing information about his finances and that he provide authorization for the SSA to obtain his financial records. (R. 832–46.) Manning responded via letter stating: "As stated by Mr. Manning's doctors with his impairment. He Doesn't have the ability to address the form 632 to complete and return it." (R. 850.) On September 26, 2022, the hearing office again requested that Manning complete the SSA-632 Request for Waiver of Overpayment Form and explained that this information was needed to determine whether the overpayment could be waived. (R. 863–79.) Manning responded that his doctors told him not to complete the form. (R. 879.)

In a December 2, 2022 decision, ALJ Weiss held that Manning was not at fault for the overpayment but did not qualify for a waiver of the SSA's collection of the overpayment under 20 C.F.R. § 404.506. (R. 15–17.) The ALJ first found that Manning was not at fault for the overpayment because his mental impairments prevented him from understanding his obligation to report his workers' compensation benefits to the SSA. (R. 15.) Nonetheless, ALJ Weiss also found that the requirements for waiving the overpayment were not met because Manning failed to provide sufficient financial information to support a determination that he met other requirements to qualify for the waiver. (R. 16.) Specifically, ALJ Weiss explained that the financial information was necessary to determine whether recovery of the overpayment would defeat the purpose of Title II. (R. 16.) He noted that Manning's request for a waiver was initially denied in part because, despite multiple requests from the SSA and the hearing office, Manning "refused to disclose his income, resources and expenses." (R. 16.) ALJ Weiss pointed out that

10

Manning had the capacity to draft a seven-page letter with citations to the Code of Federal Regulations and to the SSA policy in support of his contention that he was not at fault in causing the overpayment, yet Manning claimed that he was incapable of completing the SSA's form requesting financial information. (R. 16.)

Ultimately, ALJ Weiss determined that Manning failed to put forth any evidence demonstrating that recovery of the overpayment would "deprive [him] of income required for ordinary and necessary living expenses," and had failed to establish that "[r]ecovery of the overpayment would [ ] be against equity and good conscience." (R. 16–17.) ALJ Weiss concluded that "[b]ased on the current evidence, the undersigned must find that recovery of the overpayment would not defeat the purpose of Title II." (R. 17.) He further concluded that recovery of the overpayment would not be against equity or good conscience as Manning had not argued, and the evidence did not show, that he had "changed his position for the worse or given up a valuable right by relying on the overpayment itself or notice that the payment would be made." (R. 17.)

### f. Second Appeals Council Decision

Manning requested review of ALJ Weiss's decision by the Appeals Council. (*See* R. 1.) On October 5, 2023, the Appeals Council denied Manning's request for review, making the ALJ's December 2, 2022 decision final. (R. 1–5.)

## II. Procedural Background

On November 6, 2023, Manning commenced this action as a self-represented litigant. (Compl., ECF No. 1.) The Complaint asserts claims of negligence and intentional infliction of emotional distress arising out of the October 5, 2023 order by the Appeals Council denying

Manning's request for an appeal and rendering final ALJ Weiss's decision that Manning did not qualify for a waiver of the overpayment.[5] (*Id.* at 4–5, 7.)

In light of Manning's pro se status, the Court has construed the Complaint as both appealing the Commissioner's decision denying waiver of the overpayment of his disability insurance benefits pursuant to 42 U.S.C. § 405(g) and asserting tort claims for negligence and intentional infliction of emotional distress against the Commissioner. Elec. Order, Jan. 25, 2024; *see also Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021) (requiring that a court construe a pro se complaint "liberally to raise the strongest arguments it suggests"). Accordingly, the Court set scheduling orders to govern any motion to dismiss the tort claims under Rule 12(b)(6) and the parties' motions for judgment on the pleadings under Rule 12(c). (Elec. Order, Jan. 25, 2024.)

On May 30, 2024, Manning moved for judgment on the pleadings. (Pl.'s Mot. J. Pleadings.)[6] On September 5, 2024, the Commissioner filed a cross-motion for judgment on the pleadings, along with a memorandum of law in support of its motion and in opposition to Manning's motion. (Def.'s Mot. J. Pleadings; Mem. ISO Def.'s Mot. J. Pleadings ("Def.'s Mot. J. Pleadings Mem."), ECF No. 46-1.) On September 18, 2024, Manning filed an opposition to the Commissioner's motion for judgment on the pleadings. (Pl.'s Mot. J. Pleadings Opp'n, ECF No.

---

[5] In his Complaint, Manning states that the SSA's Office of Appellate Operations "approved my Situation.and Condition as well as the (AC)," and Manning cites the Appeals Council's January 25, 2022 order vacating and remanding ALJ Tobias's decision. (Compl. at 7.) However, his appeal concerns the Appeals Council's October 5, 2023 decision because Manning attaches a notice apprising him of that decision to his Complaint. (*Id.* at 10-13.)

[6] Before he filed his motion for judgment on the pleadings, Manning submitted several piecemeal letters that appeared to argue the substance of his claim for judgment on the pleadings. (*See* ECF Nos. 23–26, 28–31.) The Court directed Manning that this piecemeal approach was improper, and that the Court would not consider such letters, but that Manning could include any arguments from these letters in his motion for judgment on the pleadings. (Elec. Order, Apr. 30, 2024.)

47.) On October 7, 2024, Manning filed a second memorandum in support of his motion for judgment on the pleadings. (Second Mem. ISO Pl.'s Mot. J. Pleadings ("Pl.'s Mot. J. Pleadings Mem."), ECF No. 50).[7] On December 3, 2024, the Commissioner filed a reply in further support of its motion for judgment on the pleadings. (Def.'s Mot. J. Pleadings Reply, ECF No. 51.)

On May 30, 2024, the Commissioner also filed its motion to dismiss Manning's negligence and intentional infliction of emotional distress claims for lack of subject matter jurisdiction. (Mot. Dismiss.) Manning opposed the motion to dismiss on June 24, 2024 (Mot. Dismiss Opp'n, ECF No. 38),[8] and the Commissioner replied on July 11, 2024. (Mot. Dismiss Reply, ECF No. 39.) On July 19, 2024, Manning filed a sur-reply. (Pl.'s Mot. Dismiss Sur-reply, ECF No. 41.)

On April 28, 2025, the Court heard oral argument on the parties' cross-motions for judgment on the pleadings. (Min. Entry, April 29, 2025.) The Court informed Manning that ALJ Weiss had found that Manning was not at fault for the overpayment, and that if Manning would complete and submit forms SSA-632 and SSA-4641, the Court would have a basis to remand the case. (*Id.*) Counsel for the Commissioner agreed. (*Id.*) However, Manning maintained that he was physically and mentally unfit to fill out the forms and wished to proceed to trial. (*Id.*) The Court warned Manning that the existing record did not show that ALJ Weiss's decision was

---

[7] Three days earlier, on October 4, 2024, Manning filed the document located at ECF No. 49, which appears to be nearly identical to his second memorandum in support of his motion for judgment on the pleadings, which is located at ECF No. 50. For ease of reference, the Court will refer to Manning's second memorandum located at ECF No. 50 throughout this Opinion and Order.

[8] Manning raises additional arguments with respect to his Rule 12(c) motion for judgment on the pleadings in his opposition to the Commissioner's Motion to Dismiss the tort claims asserted in the Complaint. (*See* Mot. Dismiss Opp'n.) In light of Manning's pro se status, the Court has reviewed these arguments as well.

based on insufficient evidence or committed an error of law because Manning had failed to provide his financial information to the SSA for a determination of whether recovery of the overpayment would defeat the purpose of Title II of the Social Security Act or would be against equity and good conscience. (*Id.*) The Court also warned Manning that if the Court granted the Commissioner's motion for judgment on the pleadings and the motion to dismiss Manning's tort claims, Manning's case would not go to trial. (*Id.*) As a result, the Court inquired into Manning's ability to get help from family or friends in filling out his financial information and also noted that staff at the Hofstra Law Pro Se Clinic, located in the Central Islip Courthouse, were available to speak to Manning about his case. (*Id.*) Manning maintained that he could not fill out SSA-632 or SSA-4641. (*Id.*)  Nonetheless, the Court ordered the Commissioner to mail the financial forms to Manning and advised that it would provide Manning one month to review the forms and determine whether he would complete and return them to the Court. (*Id.*) On May 9, 2025, Manning filed a letter with the Court stating that he was "adamant about not filling out the two forms SSA-632 and SSA-4641." (May 9, 2025 Ltr. at 5, ECF No. 54.)[9]

---

[9] On May 15, 2025, Manning filed another letter, which appears to construe the Commissioner's motion for judgment on the pleadings as a motion for summary judgment on the basis of qualified immunity. (May 15, 2025 Ltr., ECF No. 55.) However, as explained above, the Court directed Manning that it would not consider Manning's submission of piecemeal letters and that Manning was required to include any arguments opposing the Commissioner's motion in his submissions filed on or before June 6, 2024—nearly one year ago. (*See supra* note 6; Elec. Order, Apr. 30, 2024.) Nevertheless, even considering the entire contents of Manning's May 15, 2025 submission, nothing in the submission alters the findings and determinations reached in this Order and Opinion. Notably, the Commissioner does not raise qualified immunity in its motion for judgment on the pleadings and Manning does not make any other persuasive arguments in the submission. (*See* Def.'s Mot. J. Pleadings Mem.)

**STANDARDS OF REVIEW**

I.    **Judicial Review of a Final Decision by the Social Security Administration Under 42 U.S.C. § 405(g)**

"Under 42 U.S.C. § 405(g), federal courts are permitted to engage in only limited review of final SSA disability benefit decisions." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 154 (2d Cir. 2024). A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence, considering the record as a whole" to support that decision and "if the correct legal standards have been applied." *Id.*; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). A district court may only set aside a determination by an ALJ that is based upon legal error or that is unsupported by substantial evidence. *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022).

The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "Substantial evidence . . . is more than a mere scintilla." *Id.* (quotation marks omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Rucker*, 48 F.4th at 91 (same).

When reviewing a Commissioner's final decision, a court "must be careful not to substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 569 (S.D.N.Y. 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)). "The substantial evidence standard means that . . . we can reject th[e] [Commissioner's findings] only if a reasonable factfinder would *have to conclude otherwise*." *Ling Chen v. Comm'r of Soc. Sec. Admin.*, 741 F. App'x 849, 850 (2d Cir. 2018) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012)) (quotation marks omitted) (emphasis in original). Courts "will not defer to

15

the Commissioner's determination," however, "if it is the product of legal error." *Balotti v. Comm'r of Soc. Sec.*, 605 F. Supp. 3d 610, 613 (S.D.N.Y. 2022)."A court reviewing the Commissioner's determination must generally base its decision 'upon the pleadings and transcript of the record.'" *Skrodzki v. Comm'r of Soc. Sec.*, No. 11-cv-5173, 2013 WL 55800, at *4 (E.D.N.Y. Jan. 3, 2013) (quoting 42 U.S.C. § 405(g)), *aff'd*, 693 F. App'x 29 (2d Cir. 2017). Under the sixth sentence of 42 U.S.C. § 405(g), the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Raitport v. Callahan*, 183 F.3d 101, 104 (2d Cir. 1999). "Thus, remand pursuant to the sixth sentence requires (1) a showing that there is new and material evidence and (2) good cause for the failure to incorporate that evidence into the record in a prior proceeding." *Skrodzki*, 2013 WL 55800, at *4 (citing *Raitport*, 183 F.3d at 103).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "A remand for a rehearing is proper when further findings would so plainly help to assure the proper disposition of the claim." *Skrodzki v. Comm'r of Soc. Sec. Admin.*, 693 F. App'x 29 (2d Cir. 2017) (quoting *Butts v. Barnhart*, 388 F.3d 377, 384–85 (2d Cir. 2004)) (cleaned up).

"Social Security disability determinations are investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). A social security ALJ has a duty on behalf of all claimants to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," and "to investigate and

develop the facts and develop the arguments both for and against the" claimant. *Id.* (quotation marks and alterations omitted).

"When a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are heightened." *Id.* at 113; *see also Lundie v. Kijakazi*, No. 21-1203-CV, 2022 WL 1154122, at *1 (2d Cir. Apr. 19, 2022). "The ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Moran*, 569 F.3d at 113 (quotation marks and brackets omitted); *see also Lundie*, 2022 WL 1154122, at *1. "And when a claimant appears *pro se* and is otherwise impaired, we must make a searching investigation of the record to make certain that the claimant's rights have been adequately protected." *Moran*, 569 F.3d at 113 (quotation marks omitted); *see also Lundie*, 2022 WL 1154122, at *1.

"An ALJ's failure to adequately develop the record warrants remand." *Lundie*, 2022 WL 1154122, at *1 (citing *Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999)); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 753 (2d Cir. 1982) (remanding for a new administrative hearing where the ALJ failed to "fulfill[] his special obligation to protect the rights of unrepresented claimants by fully uncovering all the relevant facts"); *see also Skrodzki*, 2013 WL 55800, at *5 (remanding where "Plaintiff was *pro se* at the prior proceeding, and the ALJ failed to make any attempt to develop the record or aid Plaintiff in understanding the legal issues involved in his claim").

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks and citation omitted). "[A] *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quotation marks and citation omitted).

## II.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). A district court may refer to evidence outside the pleadings to resolve a motion to dismiss for lack of subject matter jurisdiction. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). In deciding a Rule 12(b)(1) motion, the Court must "accept[] all material facts alleged in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

## I.    The Commissioner's Decision is Supported by Substantial Evidence

As discussed in detail below, after carefully reviewing the administrative record as a whole, the Court concludes that the ALJ's determination that Manning is not entitled to a waiver of the SSA's recovery of overpaid disability insurance benefits in the amount of $184,797 during the period of May 1996 through October 2014 is supported by substantial evidence and is not based on legal error. Specifically, there is substantial evidence to support the ALJ's determination that recovery of this overpayment would not defeat the purpose of Title

18

II or be against equity or good conscience under 42 U.S.C. § 404(b). Accordingly, judgment on the pleadings in favor of the Commissioner is warranted.

      a.   <u>Overpayment of Disability Insurance Benefits</u>

Where an individual is entitled to receive both disability insurance benefits under the Act and federal workers' compensation benefits based on a disability, the SSA is required to reduce the individual's monthly disability insurance benefits in part based on the amount of the workers' compensation benefits provided to the individual. 42 U.S.C. § 424a(a)(2)(A); *see also Bubnis v. Apfel*, 150 F.3d 177, 179 (2d Cir. 1998) ("42 U.S.C. § 424a(a)[] requires in certain circumstances . . . that monthly federal disability payments be offset in part by the amount of a recipient's state workers' compensation payments.").

If the Commissioner finds that an individual received an overpayment of benefits, the Commissioner must recover the amount of the overpayment by decreasing a payment due to that individual or requiring a refund of the overpayment. 42 U.S.C. § 404(a) ("Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery *shall* be made, under regulations prescribed by the Commissioner." (emphasis supplied)). The Commissioner is prohibited from adjusting payments or recovering that overpayment, however, from "any person who is without fault if such adjustment or recovery would defeat the purpose of [Title II of the Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1); *Langella v. Bush*, 161 F. App'x 140, 142 (2d Cir. 2005). The regulations prescribed by the Commissioner regarding overpayment of benefits under Title II of the Act are set forth in Sections 404.501–545 of Title 20 of the Code of Federal Regulations ("Section 404.501" through "Section 404.545"). *See* 42 U.S.C. § 404(a); 20 C.F.R. §§ 404.501–545.

Section 404.506 provides that, when a benefit-recipient requests waiver of the responsibility to repay any overpayment of benefits,

> the individual gives SSA information to support his/her contention that he/she is without fault in causing the overpayment and that adjustment or recovery would either defeat the purpose of title II of the Act or be against equity and good conscience. That information, along with supporting documentation, is reviewed to determine if waiver can be approved.

20 C.F.R. § 404.506(d) (citations omitted). The Second Circuit has made clear that the statute places the burden *on the individual* to establish that he is entitled to a waiver of the requirement to repay what was overpaid. *See Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1042 (2d Cir. 1984) ("Assuming that the recipient can show that he is without fault, the statutory standard places the burden on him to show also that repayment would either be inequitable or would defeat the purposes of the Act."); *Hannon v. Barnhart*, 134 F. App'x 485, 487 (2d Cir. 2005) (holding that the claimant was "properly denied a waiver of recovery" where she "did not meet her burden of establishing that she was 'without fault'"); *Ming v. Astrue*, No. 07-cv-4567, 2009 WL 2495947, at *4 (E.D.N.Y. Aug. 13, 2009) ("Plaintiff has the burden of establishing her entitlement to a waiver of overpayment recovery." (citing 20 C.F.R. § 404.506(c))).

A district court "must uphold a decision . . . that a claimant was not without fault if it is supported by substantial evidence in the record as a whole, because that determination is factual in nature." *Valente*, 733 F.2d at 1041 (citations omitted). "Further the issues of whether repayment would defeat the purposes of the Act or be against equity or good conscience implicate an exercise of informed judgment," and the Commissioner "has considerable discretion in making these determinations." *Id.*

### i. *Whether the Benefit-Recipient is Without Fault in Causing the Overpayment*

42 U.S.C. § 404(b)(2) provides that, when determining whether any individual is without

fault for being provided an overpayment of benefits, the Commissioner "shall specifically take

into account any physical, mental, educational, or linguistic limitation such individual may have

(including any lack of facility with the English language)." 42 U.S.C. § 404(b)(2); *see also* 20

C.F.R. § 404.507 (in determining fault, the SSA "will consider all pertinent circumstances,

including the individual's age and intelligence, and any physical, mental, educational, or

linguistic limitations . . . ."). Whether an overpaid individual is considered to be at "fault":

> depends upon whether the facts show that the incorrect payment to the individual
> . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have
> known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be
> material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which
> he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The Commissioner's fault in making the overpayment, if any, is irrelevant.

*Id.* ("Although the [SSA] may have been at fault in making the overpayment, that fact does not

relieve the overpaid individual or any other individual from whom the [SSA] seeks to recover the

overpayment from liability for repayment if such individual is not without fault."); *see also Vidal

on behalf of Vidal v. Saul*, No. 21-cv-1004, 2021 WL 5567287, at *5 (S.D.N.Y. Nov. 29, 2021)

(citing *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983)).

### ii. *Whether Adjustment or Recovery Would Defeat the Purpose of Title II of the Act*

Recovery of an overpayment of benefits defeats the purpose of Title II of the Act if that

recovery would "deprive a person of income required for ordinary and necessary living

21

expenses." 20 C.F.R. § 404.508(a). The analysis under this standard "depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. § 404.508(a). Under Section 404.508(a), "ordinary and necessary expenses" include "fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance, . . . taxes, installment payments," medical bills, hospitalizations, "[e]xpenses for the support of others for whom the individual is legally responsible," and "[o]ther miscellaneous expenses which may reasonably be considered as part of the individual's standard of living." *Id.* § 404.508(a)(1)–(4); *see, e.g.*, *Adams v. Astrue*, No. 11-cv-289, 2012 WL 768211, at *5 (E.D.N.Y. Mar. 9, 2012). "Adjustment or recovery will defeat the purposes of title II in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses." 20 C.F.R. § 404.508(b).

Under Section 404, the Commissioner "shall require an individual to provide authorization for the Commissioner to obtain . . . from any financial institution . . . any financial record . . . held by the institution with respect to such individual whenever the Commissioner determines the record is needed" to determine whether an adjustment or recovery of overpaid benefits would defeat the purposes of Title II. 42 U.S.C. § 404(b)(3)(A). "If an individual refuses to provide, or revokes, any authorization for the Commissioner of Social Security to obtain from any financial institution any financial record, the Commissioner *may, on that basis, determine that adjustment or recovery would not defeat the purpose of this subchapter*." *Id.* § 404(b)(3)(E) (emphasis supplied); *cf. Borodkin v. Barnhart*, No. 06-cv-2583, 2007 WL 1288602, at *5 (S.D.N.Y. May 2, 2007) (affirming ALJ's determination that the claimant could afford to repay

the overpayment in monthly installments where the claimant had "earned a substantial income in all relevant years" and "[m]oreover, [the claimant] refused to provide information about his assets").

### iii. Whether Adjustment or Recovery Would be Against Equity or Good Conscience

Recovery of an overpayment is against equity and good conscience if an individual "[c]hanged his . . . position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself . . . ." 20 C.F.R. § 404.509(a)(1)[10]; *see, e.g., Nnakwe v. Astrue*, No. 11-cv-2415, 2012 WL 3061505, at *2 (E.D.N.Y. July 26, 2012). Section 404.509 provides two examples of circumstances in which repayment of overpaid benefits would be "against equity and good conscience" under this standard, neither of which apply to Manning. 20 C.F.R. § 404.509.[11] Section 404.509 further

---

[10] Section 404.509(a) provides a second situation in which recovery is against equity and good conscience where an individual did not receive the overpayment. *See* 20 C.F.R. § 404.509(a). This provision is inapplicable because there is no dispute that Manning received his disability insurance benefits during the period the SSA claims he was overpaid, between May 1996 and October 2014.

[11] Section 404.509 provides the following examples:

> Example 1. A widow, having been awarded benefits for herself and daughter, entered her daughter in private school because the monthly benefits made this possible. After the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's private school expenses. Having entered the daughter in private school and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits. In this situation, the recovery of the payments would be against equity and good conscience.

> Example 2. After being awarded old-age insurance benefits, an individual resigned from employment on the assumption he would receive regular monthly benefit payments. It was discovered 3 years later that (due to a Social Security

provides that "[t]he individual's financial circumstances are not material to a finding" that repayment of overpaid benefits would be "against equity and good conscience." *Id.* § 404.509(b).

> b.  Request for Reconsideration of an Initial SSA Decision

The Commissioner has promulgated regulations that specifically govern the process by which an individual can request reconsideration of an initial SSA decision relating to disability insurance benefits. 20 C.F.R. § 404.907 provides:

> If you are dissatisfied with the initial determination, reconsideration is the first step in the administrative review process that we provide, except that we provide the opportunity for a hearing before an administrative law judge as the first step for those situations described in §§ 404.930(a)(6) and (a)(7), where you appeal an initial determination denying your request for waiver of adjustment or recovery of an overpayment (see § 404.506). If you are dissatisfied with our reconsidered determination, you may request a hearing before an administrative law judge.

20 C.F.R. § 404.907. Under the applicable regulations, when an individual requests reconsideration of a decision, the SSA conducts a "case review" in which the SSA gives the claimant "an opportunity to present additional evidence to [the SSA]" and then "[t]he official who reviews [the] case will then make a reconsidered determination based on all of this evidence." 20 C.F.R. § 404.913.

> c.  Analysis

The Commissioner's decision that recovery of Manning's overpayment of benefits would not defeat the purpose of Title II of the Act or go against equity or good conscience was not based on any legal error and is supported by substantial evidence in the record. (*See* R. 11–17.)

---

Administration error) his award was erroneous because he did not have the required insured status. Due to his age, the individual was unable to get his job back and could not get any other employment. In this situation, recovery of the overpayments would be against equity and good conscience because the individual gave up a valuable right.

20 C.F.R. § 404.509.

### i. *The Nature of Manning's Request*

As an initial matter, Manning appears to argue that the Commissioner's characterization of his request as a "waiver" request instead of a request for reconsideration somehow prejudiced him. (Pl.'s Mot. J. Pleadings Mem. at 4–12). In the "Request for Reconsideration" form that Manning filed with the SSA on April 18, 2017, Manning stated that "the overpayment was not my fault and repaying it would be unfair to me." (R. 184.) On that form, Manning did not contest the amount of the overpayment—$184,797—or that he did in fact receive disability benefits under the Act and workers' compensation benefits under FECA. (*Id.*) He also did not raise any other basis for reconsideration of the overpayment recovery decision. (*Id.*) On December 6, 2017, Manning also sent a letter stating:

> I'm asking for a . . . waiver of collection on the overpayment as 'alleged.' And reconsideration of my waiver in writing at your local Social Security office. The overpayment was not the fault, of the claimant and it would be unfair for other reasons As well, And, collection of the overpayment will be contrary to the intent of the program.

(R. 193.) The SSA construed his request as a request for reconsideration *and* a waiver request in accordance with the governing regulations and denied both requests. (R. 201, 214.) Based on Manning's assertions quoted above, the SSA did not commit legal error when it construed Manning's request as a request for a waiver of overpayment under 42 U.S.C. § 404(b)(1) in addition to being a request for reconsideration.

To the extent that the SSA could have construed Manning's "Request for Reconsideration" differently, the record demonstrates that Manning received essentially the same process set forth in the governing regulations for a reconsideration request because the SSA afforded Manning the opportunity to submit additional evidence and provided for an independent review of the initial decision Manning was challenging through both a personal conference and then again at a hearing before an ALJ. (*See, e.g.*, R. 180, 198–99.)

### ii. *ALJ Weiss's Finding that Manning was Without Fault*

Manning principally argues that he was not at fault for the overpayment because he did

inform the SSA about his workers' compensation benefits and because his "mental impairments"

"deprived him from understanding his obligation to report his [workers' compensation] benefits."

(Mot. Dismiss Opp'n at 7, 11, 14, 15, 17; *id.* at 14 ("The Crux of the Matter: Here is This whole

case is about (whether I did or, did not inform Social Security).").) He also argues that the SSA is

at fault for the overpayment as it "knew that [Manning] was receiving benefits. But did nothing

about it." (Mot. Dismiss Opp'n at 7.)

These arguments seek to overturn ALJ Tobias's 2017 decision finding Manning at fault

for the overpayment. (*See* Mot. Dismiss Opp'n at 15 ("There are Several Mistakes in judge

David Tobias Conclusions."); *see also id.* at 16–17.) However, ALJ Tobias's decision was

vacated by the Appeals Council and was superseded by the December 2, 2022 decision in which

ALJ Weiss found that Manning was *not* at fault for the overpayment. (*See* R. 15–17, 90.) In his

decision, ALJ Weiss found that:

> On review of the facts of this case, . . . **due to the claimant's mental
> impairment, he was not at fault** for failure to furnish information concerning his
> [workers' compensation] benefit. The claimant was found disabled in 1996 on the
> basis of his mental impairment. Medical records from that time show that the
> claimant was being treated for depressive disorder and anxiety disorder, and that
> he was experiencing depression, anxiety, irritability, difficulty sleeping, poor
> appetite, and multiple somatic complaints. The claimant related his complaints to
> harassment at his job. A reviewing physician for the employer referenced a
> delusional status (Ex. B4F).

(R. 15 (emphasis added).)

ALJ Weiss's decision became the final decision of the Commissioner on October 5, 2023,

when the Appeals Council denied Manning's request for review. *Id.* 1–5; *see* 42 U.S.C. § 405(g)

(providing this Court with jurisdiction to review the Commissioner's final decisions). Because

the Commissioner's final determination found that Manning was *not* at fault for the

overpayment, the Court does not address Manning's arguments regarding ALJ Tobias's earlier, now-vacated decision, which had found that Manning was at fault.[12]

### iii. ALJ Weiss's Finding that Recovery of the Overpayment Would Not Defeat the Purpose of Title II of the Act

ALJ Weiss found "that recovery of the overpayment would not defeat the purpose of Title II" because of three separate occasions in which Manning failed to provide proof of his income, household expenses, assets, and the income and assets for his spouse and dependents. (R. 16–17.) First, ALJ Weiss noted that, in his initial request for a waiver of overpayment, Manning only completed two pages of Form SSA-632 and did not complete Form SSA-4641, which would grant the SSA authorization to obtain Manning's financial records. (R. 16.) Second, ALJ Weiss noted that the SSA hearings office mailed Manning another Form SSA-632 on July 26, 2022, and Manning submitted a letter in response stating that "he was not capable of completing an SSA-632." (*Id.*) Third, ALJ Weiss noted that the SSA again mailed Form SSA-632 to Manning on September 26, 2022, and Manning responded with "a detailed letter stating that it was not 'medically possible' for him to complete the form." (*Id.*)

As noted, in determining whether recovery of an overpayment of benefits would defeat the purpose of Title II, the Commissioner "shall require an individual to provide authorization for the Commissioner to obtain . . . from any financial institution . . . any financial record . . . held by the institution . . . ." 42 U.S.C. § 404(b)(3)(A). Under the governing regulations, Manning was responsible for providing proof of income, household expenses, and assets. *See* 20 C.F.R.

---

[12] Manning has submitted additional evidence in support of his Motion for Judgment on the Pleadings, but this evidence, which consists of notes from his treating psychiatrist, Dr. Conciatori, in the mid to late 1990s, relates only to his arguments regarding ALJ Tobias's determination that Manning was at fault. (ECF Nos. 43–44.) Because ALJ Tobias's determination was vacated, the Court does not address whether this evidence is "new evidence" that warrants remand under 42 U.S.C. § 405(g).

§§ 404.506(c), 404.508(a). Manning has the burden of demonstrating that repayment would defeat the purpose of Title II of the Act by providing information about his current financial circumstances and responding to the Commissioner's request for authorization to obtain his financial records. *See, e.g.*, *Valente*, 733 F.2d at 1042; *Borodkin*, 2007 WL 1288602 at \*4–5 (finding that even if the plaintiff had been without fault, recovery should not have been waived because the plaintiff "bears the burden of proving that repayment would either be inequitable or would defeat the purpose of the Act" and the plaintiff "did not show . . . how he needed substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."); *see also Madson v. Bowen*, No. 85 F 2636, 1986 WL 83398, at \*5 (D. Colo. July 11, 1986) (finding that an overpaid recipient did not meet the burden of proving that waiver of the overpayment was warranted under the SSA regulations where the recipient refused to complete an overpayment recovery questionnaire either prior to or at the hearing).

Manning failed to meet that burden. Manning provided some information at the October 17, 2019 hearing before ALJ Tobias about his assets, including his house, car, and $5,000 in savings, as well as many of his expenses and liabilities, including his credit card debt and monthly mortgage, car, and utility payments. (*See* R. 48–49, 52–56; *see also supra* Background Section I(c).) This testimony, however, did not provide detail about each of Manning's *assets*— including the current value of his home or car—or the financial assets and expenses of his dependents. (*See* R. 48–49, 52–56; *see also supra* Background Section I(c).) Indeed, Manning stated at one point that he has "been, you know, getting some money from other people" to help him pay his bills, but he did not state whether those people were his dependents or others. (R.

65.) Further, there is no evidence in the record demonstrating whether Manning has any other assets other than those about which he testified.

Despite multiple requests throughout the administrative proceedings, Manning repeatedly refused to provide written documentation about his financial circumstances or to provide authorization for the SSA to obtain his financial records. (*See, e.g.*, R. 880 ("This is the fourth time you are trying to get me to fill out this form. I told you. And my doctors told you. This is not Medically Possible.").) As a result of Manning's refusal to provide the requisite information, ALJ Weiss was unable to determine the scope of Manning's financial resources. (*See* R. 16.) Thus, there is substantial evidence in the record that Manning "refuse[d] to provide . . . any authorization for the Commissioner . . . to obtain from any financial institution any financial record" in violation of Section 404(b)(3)(E). *See* 42 U.S.C. § 404(b)(3)(E); *see, e.g.*, R. 16, 239, 850, 879–880.

Manning's contention that he was medically unable to submit the requisite financial information does not require a reversal of the Commissioner's decision. Nothing in the governing statute or regulations provide for a medical exemption to an individual's duty to provide evidence to support a claim for a waiver of the SSA's collection of the overpayment of benefits when the Commissioner requests such information under Section 404(b)(3)(E). Furthermore, Manning testified that his adult son, who lived with him, and his adult daughter, who served as his caretaker, assisted him in preparing statements submitted to the SSA, as well as with paying bills. (R. 49–50, 63.) In fact, ALJ Tobias suggested to Manning that, if he experienced any difficulty completing the required financial forms, his adult children could assist him. (R. 66.) Further, as ALJ Weiss noted, Manning was able, whether alone or with help, to draft a seven-page letter, with citations to the Code of Federal Regulations and to the SSA

policies, in support of his contention that he was not at fault in causing the overpayment, yet he claimed that he was incapable of completing the SSA's form requesting financial information. (R. 16.) These facts undermine Manning's contention that he was medially incapable of completing the forms.

For all of these reasons, based on a close review of the record, the Court finds substantial evidence supporting the Commissioner's determination that Manning failed to put forth sufficient evidence showing that recovery of the overpayment in benefits would defeat the purpose of Title II by "depriv[ing] [him] of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a).

It is significant that the Commissioner requested oral argument on the motion for judgment on the pleadings in order to facilitate a discussion with Manning about whether he would submit the financial information required to assess whether he meets the standard for a waiver of the obligation to repay the overpaid benefits. (Def.'s Mot. J. Pleadings Mem. at 13 n.4.) The Commissioner explains that if Manning were to provide this information, even at this late stage, the Commissioner would seek remand of the case for the consideration of this new evidence. (*Id*. at 14.) A district court may remand a case to the Commissioner for consideration of "new evidence which is material" and where "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding" under 42 U.S.C. § 405(g). *Skrodzki*, 2013 WL 55800, at *4.

The Court held oral argument on the motion for judgment on the pleadings on April 28, 2025, in order to facilitate discussions between the parties about whether Manning would provide the requested financial information. Manning declined to provide the requested information, stating that he was not physically or mentally able to fill out the forms. (Min. Entry,

Apr. 29, 2025.) Nonetheless, the Court gave Manning one more chance to review and complete

the forms. (*Id*.) However, Manning sent a letter to the Court expressing that he was "adamant

about not filling out the two forms." (May 9, 2025 Ltr.) *See also supra* Background Section II.

Moreover, Manning's filings on the motion for judgment on the pleadings make no

mention of any new evidence of his financial circumstances, or any willingness on his part to

provide the Commissioner with his financial records. The SSA made numerous efforts to have

Manning complete the requisite financial forms to assist in his waiver application, but Manning

continuously refused, citing various reasons. (R. 239, 850, 879–80.)

Unfortunately, on this factual record, remand is unwarranted because the Commissioner

would not have access to any "new evidence which is material" on remand. 42 U.S.C. § 405(g);

*cf. Skrodzki*, 2013 WL 55800, at \*4.

### iv.  *ALJ Weiss's Determination That Recovery of the Overpayment was Not Against Equity or Good Conscience*

ALJ Weiss found that recovery of the overpayment would not be against equity and good

conscience because Manning did "not put forth an argument that he changed his position for the

worse or gave up a valuable right by relying on the overpayment itself or notice that the payment

would be made, and there is no evidence of same in the record." (R. 17.) This decision was not

based on legal error and is supported by substantial evidence considering the record as a whole.

Here, Manning has not argued, and nothing in the record indicates, that he changed his position

for the worse or relinquished a valuable right in reliance on the overpayments. Manning merely

claims that repayment would be against equity and good conscience because equity and good

conscience "means fairness." (Pl.'s Mot. J. Pleadings Mem. at 11.) This is insufficient under the

governing statute and regulations. *See* 20 C.F.R. § 404.509(a) (establishing that recovery of

overpayment is "against equity and good conscience" if the individual "[c]hanged his or her

31

position for the worse" or "relinquished a valuable right" in reliance on the overpayment);

*Tejada v. Colvin*, No. 14-cv-841, 2014 WL 4744435, at *6 (S.D.N.Y. Sept. 24, 2014) (The

individual seeking a waiver "has the burden of showing a change in position for the worse in

order to demonstrate that recovery would be against equity and good conscience." (citing

*Valente*, 733 F.2d at 1042)).

      d.  <u>Conclusion</u>

In short, because the Court finds that the Commissioner's determination that Manning

was not entitled to a waiver of the overpayment is supported by substantial evidence and does

not rest on any error of law, the Court affirms the Commissioner's decision under 42 U.S.C.

§ 405(g). Thus, Manning's motion for judgment on the pleadings is denied, and the

Commissioner's motion for judgment on the pleadings is granted.

## II.    The Court Lacks Subject Matter Jurisdiction Over Manning's Tort Claims Under the Social Security Act

The Commissioner argues that Manning's claims that "the Commissioner's decision to

recover overpaid benefits was done in a negligent and/or intentionally wrongful way," arise

under the Social Security Act and are therefore barred by sovereign immunity. (Mot. Dismiss

Mem. at 1.) The Court agrees.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies

from suit." *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016) (quoting *F.D.I.C. v.

Meyer*, 510 U.S. 471, 475, (1994)); *see also Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir.

2004) ("It is, of course, axiomatic under the principle of sovereign immunity that the United

States may not be sued without its consent and that the existence of consent is a prerequisite for

jurisdiction." (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983)) (quotation marks

omitted)). Waivers of sovereign immunity must be "unequivocally expressed in statutory text"

and will be strictly construed in favor of the government. *Binder & Binder*, 818 F.3d at 70; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996).

"[T]he United States has not waived its sovereign immunity for claims by a Social Security claimant seeking monetary relief in addition to benefits awards." *Donnelly v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Liffiton v. Keuker*, 850 F.2d 72, 77 (2d Cir. 1988)). "Though the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of [the] SSA's final decisions made after a hearing, and confers subject matter jurisdiction to that extent, it is well-established that the Act 'does not bestow a private right of action for monetary relief.'" *Purisima v. Astrue*, No. 12-cv-3528, 2012 WL 5519295, at *3 (S.D.N.Y. Nov. 14, 2012) (quoting *Katsoulakis v. Astrue*, No. 10-cv-81, 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011)). Further, "the Supreme Court has found that no action for damages can be maintained against personnel of the SSA because Congress provided an elaborate statutory scheme in the Act with 'meaningful safeguards or remedies for the rights of persons' wrongfully denied under the Act." *Ortega v. Colvin*, No. 13-cv-3487, 2015 WL 6143591, at *4 (E.D.N.Y. Oct. 19, 2015) ("[Claimants] have not been given a remedy in damages for emotional distress or for other hardships suffered because of delays in their receipt of Social Security benefits." (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)).

Here, Manning's claims for monetary damages arise from the Commissioner's decision to recover money that was overpaid to him in the form of disability benefits. (*See* Compl. at 5–9.) For example, the Complaint alleges that when the Appeals Council remanded Manning's case to the hearing before ALJ Weiss, "medical documentation and Weight were never considered. Only the [SSA]'s behavior continued. With (Negligence and Recklessness)." (*Id.* at 8.) In his opposition to the Commissioner's motion to dismiss the tort claims, Manning contends that the

SSA acted improperly in seeking to recover overpaid benefits. (Mot. Dismiss Opp'n at 6–17). In his sur-reply in opposition to the Commissioner's motion to dismiss, Manning further claims that he is suing the "federal government to obtain compensation for the negligence of its employees." (Pl.'s Mot. Dismiss Sur-reply at 2.) As such, Manning's claims seeking monetary damages for negligence and intentional infliction of emotional distress against the Commissioner are barred by sovereign immunity. *See, e.g.*, *Hatcher v. Saul*, No. 18-cv-2282, 2021 WL 1207315, at *3–4 (E.D.N.Y. Mar. 31, 2021) (finding that there "is no private right of action under the Social Security Act" and plaintiffs are "barred from bringing a civil action against the SSA for monetary relief based on violations of the Social Security Act"); *Okocha v. Disman*, No. 11-cv-1854, 2012 WL 6860892, at *12–13 (S.D.N.Y. Oct. 1, 2012) (finding claims against Commissioner for punitive damages for "'deliberate denial of benefits,' deliberate infliction of emotional distress, and 'causing [the plaintiff] undue stress'" are barred under the Social Security Act), *report and recommendation adopted*, 2013 WL 163834 (S.D.N.Y. Jan. 15, 2013); *Shmueli v. Comm'r of Soc. Sec.*, No. 17-cv-3734, 2018 WL 4403279, at *5 (S.D.N.Y. July 19, 2018) ("The [c]ourt . . . lacks subject matter jurisdiction to consider any discrimination, retaliation, harassment or similar claims for money damages against the Commissioner . . . ."), *report and recommendation adopted*, 2018 WL 4387556 (S.D.N.Y. Sept. 14, 2018). Because Manning has not alleged, nor can he allege, a waiver of the Commissioner's sovereign immunity, this Court lacks jurisdiction to adjudicate his claims. *See Velasquez v. Comm'r of Soc. Sec. Admin.*, No. 22-cv-6777, 2024 WL 22786, at *3 (E.D.N.Y. Jan. 2, 2024) ("The absence of a sovereign immunity waiver for Plaintiffs' claim for pain and suffering damages renders this Court without jurisdiction to adjudicate that claim." (citing *O'Donoghue v. United States Soc. Sec. Admin.*, 828 F. App'x 784,

788 (2d Cir. 2020) (affirming dismissal of money damages claim because the Act "provides no avenue for review of such a claim")).[13]

Accordingly, to the extent Manning seeks monetary damages for violations of the Social Security Act, his claims are barred by sovereign immunity.

### III.    The Court Lacks Subject Matter Jurisdiction Under the Federal Tort Claims Act

To the extent Manning asserts his tort claims against the Commissioner pursuant to the Federal Tort Claims Act ("FTCA"), his claims fail for lack of subject matter jurisdiction because he failed to name the United States as a party and failed to administratively exhaust his claims.

The FTCA is a "limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Liranzo v. United States*, 690 F.3d 78, 85 (2d Cir. 2012). Under the FTCA, however, "suit must be brought directly against the United States, and federal agencies are immune from suit." *Langella v. Bush*, 306 F. Supp. 2d 459, 463 (S.D.N.Y. 2004) (citing 28 U.S.C. § 2679(a)); *see also Bearam v. Sommer*, No. 12-cv-1858, 2013 WL 5405492, at *8 (S.D.N.Y. Sept. 25, 2013) (an FTCA action "against the United States is the exclusive remedy for a suit for damages for injury resulting from the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment" (quotation marks and citations omitted)).

Furthermore, "[p]rior to filing an FTCA action, a plaintiff must exhaust administrative remedies, which include presenting the claim to the appropriate federal agency." *Yunkeung Lee v. United States*, 570 F. App'x 26, 27 (2d Cir. 2014) (citing 28 U.S.C. § 2675(a)); *see Celestine v.*

---

[13] Notably, Manning's Complaint asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Compl. at 4.) However, 42 U.S.C. § 405(h) "specifically precludes Plaintiff[] from invoking this Court's jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) or 28 U.S.C. § 1346 (United States as a defendant) to 'recover on any claim arising under' the Act." *Velasquez*, 2024 WL 22786, at *4 (quoting 42 U.S.C. § 405(h)).

*Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived.") "[A]n administrative claim must be filed with the responsible federal agency within two years of a plaintiff's alleged injury." *Torres v. United States*, 612 F. App'x 37, 39 (2d Cir. 2015). A "claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013). "The plaintiff bears the burden of pleading compliance with the FTCA's exhaustion requirement." *Sherman-Amin-Braddox: Bey v. McNeil*, No. 10-cv-5340, 2011 WL 795855, at *2 (E.D.N.Y. Feb. 25, 2011) (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)). Failure to comply with this exhaustion requirement deprives the court of subject matter jurisdiction over FTCA claims. *Celestine*, 403 F.3d at 82; *see also Langella*, 306 F. Supp. 2d at 464 (holding that the plaintiff did not adequately plead exhaustion of administrative remedies where the plaintiff "sought review of the SSA's denial of his claim of waiver [but] did not file an administrative claim with respect to the alleged torts of the SSA.").

Here, the Court lacks subject matter jurisdiction over Manning's tort claims because he did not bring his claims against the proper defendant. (*See* Compl. at 1–2.) The Complaint names only the Commissioner as Defendant, not the United States. (*Id.*) Further, as discussed above, the United States may not be named as defendant in an FTCA suit concerning alleged negligence and intentional infliction of emotional distress against the Commissioner because the Social Security Act specifically states that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought . . . to recover on any claim arising under this subchapter." 42 U.S.C. 405(h); *see, e.g., Hatcher*, 2021 WL 1207315, at *4

36

("[A]ny claim under the FTCA necessarily fails . . . because [the] [p]laintiff does not name the
United States as a defendant and 'the SSA cannot be sued for negligence based on the doctrine of
sovereign immunity, which bars FTCA suits against federal agencies." (quotation marks and
brackets omitted)).

Manning's tort claims fail for the additional reason that the Complaint does not allege any
facts indicating that Manning complied with the FTCA's exhaustion requirements. (*See* Brandon
Dell'Aglio Decl. at 2, ECF No. 35-2 (noting that as of April 16, 2024, no related administrative
tort claim had been filed against the SSA by Manning).) "[W]here a plaintiff has failed to present
his or her claim to the appropriate federal agency prior to commencing a suit seeking damages
under the FTCA, the district court lacks jurisdiction, and the case must be dismissed." *McNeil*,
2011 WL 795855, at *2; *see also Oji v. Soc. Sec. Admin.*, No. 12-cv-7338, 2015 WL 6741863, at
*21 (S.D.N.Y. Nov. 4, 2015) (adopting report and recommendation and dismissing pro se
plaintiff's tort claims against the SSA, to the extent raised, because "even if [the] [p]laintiff had
named the United States as a defendant in this action, the Commissioner has no records
indicating that [the] [p]laintiff presented an administrative tort claim to the [Social Security
Administration] as is required prior to bringing suit pursuant to the FTCA, and [the] [p]laintiff
does not allege otherwise); *Pope v. Geo Grp.*, No. 18-cv-6900, 2019 WL 79426, at *3 (E.D.N.Y.
Jan. 2, 2019) ("[E]ven if a *pro se* plaintiff's complaint can be liberally construed to state a claim
under the FTCA . . . the court does not have subject matter jurisdiction over the FTCA claim if
[the] plaintiff has neither pleaded that he filed an administrative claim within two years of the
incident giving rise to the action, nor that he exhausted an administrative tort claim prior to
initiating the instant action." (quotations omitted)); *Nguyen v. Kijakazi*, No. 20-cv-607, 2022 WL
542265, at *7 (E.D.N.Y. Feb. 23, 2022) (collecting cases and finding that the court lacked subject

matter jurisdiction because "Plaintiff has not alleged any facts suggesting that he complied with the FTCA's exhaustion requirements").

In his sur-reply, Manning claims that he filed a request for administrative relief with the SSA on July 11, 2024—more than eight months after he filed the instant Complaint. (Pl.'s Mot. Dismiss Sur-reply at 2.) However, the subsequent filing of an administrative claim does not cure a prematurely filed FTCA claim. *See Liriano v. ICE/DHS*, 827 F. Supp. 2d 264, 269 (S.D.N.Y. 2011) ("The requirement that prematurely filed FTCA claims be dismissed holds even when, as here, the FTCA claims would be ripe if re-filed at the date of the court's decision."). Moreover, even if this late request for administrative relief was considered sufficient, Manning has yet to receive a final denial from the SSA as required by the FTCA. *See Phillips*, 723 F.3d at 147. Therefore, Manning's tort claims fail for lack of exhaustion under the FTCA.

Thus, because Manning failed to name the United States as defendant and has not complied with the FTCA's exhaustion requirements, the Court lacks subject matter jurisdiction over his tort claims under the FTCA. Accordingly, Manning's tort claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, pursuant to Rule 12(c), Fed. R. Civ. P., the Court denies Manning's motion for judgment on the pleadings (Pl.'s Mot. J. Pleadings, ECF No. 36) and grants the Commissioner's cross-motion for judgment on the pleadings (Def.'s Mot. J. Pleadings, ECF No. 46). Further, pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Court grants the Commissioner's motion to dismiss Manning's negligence and intentional infliction of emotional distress claims for lack of subject matter jurisdiction (Mot. Dismiss, ECF No. 35).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that, should Manning seek in forma pauperis status for the purpose of an appeal, any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


Dated:  Central Islip, New York
        May 16, 2025

                                             /s/ Nusrat J. Choudhury
                                            NUSRAT J. CHOUDHURY
                                            United States District Judge